Filed 3/24/14  In re N.A. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re N.A. et al., Persons Coming Under the Juvenile Court Law. | B250743 (Los Angeles County Super. Ct. No. CK99240) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>Y.H. et al.,<br><br>        Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County. Jacqueline Lewis, Juvenile Court Referee.  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant Y.H.

Joseph D. MacKenzie, under appointment by the Court of Appeal, for Defendant and Appellant R.A.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Y.H. (Mother) and R.A. (Father) appeal from the dependency court's jurisdictional and dispositional orders. As we find that substantial evidence supports the orders, we affirm.

## BACKGROUND

Mother and Father are the parents of N.A. (born in August 2003), M.A. (born in September 2004), R.A. (born in December 2005), S.A. (born in November 2007), L.A. (born in June 2010), H.A. (born in May 2012), and A.A. (born in April 2013). Additionally, Mother has another child, C.B. (born in December 2001), with a different father.

Between the two of them, Mother and Father had four prior referrals for child abuse/neglect. Three referrals were deemed inconclusive or unfounded. A 2003 referral relating to C.B. was deemed substantiated, and Mother refused to participate in services.

This matter came to the attention of the Department of Children and Family Services (DCFS) on April 19, 2013. On that day, it was reported that A.A. was born two days earlier testing positive for methamphetamine, and Mother also tested positive. During Mother's initial contact with the hospital social worker she lied about her name and the number of children she had. She later explained that she was afraid.

Mother denied any drug use. She said that Father told her if she put crystal meth on her private parts it would increase the pleasure of sexual contact, and that could explain why she tested positive. Mother told the social worker that Father uses crystal meth and would leave for days at a time. He had previously completed a year-long inpatient drug program but had recently started using again.

Eventually, after being told that A.A.'s positive test could not be explained by her story, Mother admitted that the day before she gave birth she "snorted a line of crystal meth." She said that she had used crystal meth only twice before, never when she was pregnant.

The social worker talked with Father, who said that four years prior, he was convicted of possession of drugs and completed and inpatient drug program. He denied using any drugs since that time. He said that on April 15, 2013, he was celebrating his

birthday at a friend's home and consumed beer, but did not use any drugs. He said that he was willing to take a drug test.

Father denied any knowledge of Mother using drugs. He acted shocked when told that Mother and A.A. tested positive for methamphetamine, and started crying and holding his head. He told the social worker: "I have been with Y.H. and I know she doesn't do drugs. She drank beer but since she found out she was pregnant she stopped."

The social worker spoke with and observed the children. All of the children who were old enough to interview said they had never seen Mother or Father use drugs or alcohol. The children said they were treated well and none expressed any fear of their parents.

On April 24, 2013, the social worker made an unannounced visit to the home. Dirt was observed on the tile floor and one bedroom had a broken bed. H.A. and S.A. had dirt caked on their feet.

The next day, a team decision meeting was held. Mother stated that she had enrolled in an outpatient program. Father said he was not attending any drug dependency meetings and denied any current drug use. Mother said she had not used crystal meth since April 16, 2013, and said she had previously only used it once in July 2012 and August 2012.

Later that day, the social worker received results from Mother's and Father's drug tests. Mother tested negative, but Father tested positive for methamphetamine. When asked about the positive test, Father adamantly denied using drugs and said he had been clean since 2008. When Mother was told about Father's positive test, she did not appear surprised.

The children were detained from Father and Mother. Father then admitted to using "a lot" of crystal meth on his birthday. He said he made a mistake and was willing to do whatever was necessary to reunify with his children.

The social worker spoke with the maternal grandmother, who told her that C.B. had been in her care since 2007. C.B. rarely visited Mother. The grandmother said that every time C.B. stayed the night at Mother's home she got lice from the other children.

3

A petition was filed on May 1, 2013, alleging, pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] that Mother's behavior placed A.A. at risk of physical harm as he was born testing positive for methamphetamine; that Mother had a history of substance abuse and was a current user, rendering her incapable of providing regular care and supervision and placing the children at risk of physical harm; and that Father had a history of substance abuse and was a current user, rendering him incapable of providing regular care and supervision and placing the children at risk of physical harm. The dependency court ordered the children detained.

At the time of the jurisdictional and dispositional hearing on May 22, 2013, Mother and Father were participating in substance abuse education and counseling, parenting skills, coping skills, and relapse prevention courses. Mother had taken three random drug tests, all of which produced negative results. Father had tested negative on four occasions. Both acknowledged the need for treatment. All of the children had been placed in foster care. A social worker had recently inspected the parents' home, which was on the second floor, and noticed screens missing from the windows. There were also objects that presented safety hazards to small children such as roach spray, debris, screws, and coins within reach. The carpet was very dirty and the home needed cleaning and childproofing.

At the hearing, the dependency court sustained the section 300 petition in its entirety. The court stated that the "nexus in risk to the children" was that A.A. was born positive for methamphetamine, meaning Mother used the drug while she was pregnant with him. The court further found that neither Mother nor Father was credible, as both of their stories had repeatedly changed, and that both were regular and consistent users of methamphetamine. Counsel for the minors, who was in favor of the court's jurisdictional findings, argued that all children except for C.B. should be released to Mother, on the condition that she continue in her programs and submit to random drug testing. Counsel

---

[1]     Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

for the parents joined in the argument. The dependency court, however, found that there would be a substantial risk to the children if they were returned home, and ordered the children removed from their parents. The court ordered that reunification services be provided.

Mother and Father timely appealed.

## DISCUSSION

### I. Jurisdiction

Mother and Father first argue that the dependency court's jurisdictional findings were not supported by substantial evidence. "The petitioner in a dependency proceeding must prove by a preponderance of the evidence that the child who is the subject of a petition comes under the juvenile court's jurisdiction." (*In re Amy M*. (1991) 232 Cal.App.3d 849, 859.) We review a challenge to the sufficiency of the evidence supporting jurisdictional findings by determining whether substantial evidence, uncontradicted or not, supports the findings. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.)

The petition alleged that multiple grounds existed for jurisdiction. In such a case, "a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. . . . [T]he reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E*. (2009) 171 Cal.App.4th 438, 451.)

Mother and Father both argue that at the time of the jurisdictional hearing there was no harm or risk of harm to the children. They rely on *In re Destiny S.* (2012) 210 Cal.App.4th 999 (*Destiny S.*) and *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*). In *Destiny S.*, the mother tested positive for methamphetamine and admitted

5

to smoking marijuana on a daily basis. The dependency court found that although the child was well cared for, and the home was neat and clean, she was at risk of serious physical harm because of the mother's drug habit. (*Destiny S.*, at p. 1002.) The appellate court reversed, finding that the use of drugs, without more, did not bring the child within the jurisdiction of the court. (*Id.* at p. 1003-1004.) In *Drake M.*, the dependency court found that the father's use of prescribed medical marijuana placed the child at substantial risk of harm. The appellate court disagreed, finding that there was no evidence of a substance abuse problem, and the record showed no specific, defined harm to the child resulting from the father's use of medical marijuana. (*Drake M.*, at pp. 768-769.)

Unlike in *Destiny S.* and *Drake M.*, where the courts found that the parents' drug use did not impact the children, the substantial risk of harm was apparent in this case. Mother admitted to snorting crystal meth the day before A.A. was born, and upon birth he tested positive for methamphetamine. "[A] child's ingestion of illegal drugs constitutes 'serious physical harm' for purposes of section 300." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 825.) Mother's blatant disregard for the health of her baby constituted substantial evidence for the dependency court's jurisdictional order.

Furthermore, Mother admitted that she had previously used methamphetamine when near her children, though she claimed that the children were outside when she used the drug. And Father had a documented history of drug abuse. The dependency court properly acted within its discretion when it found that the parents' ever-changing stories about their current drug use were not credible, and that their drug use placed the children at risk of physical harm and damage. (See *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 [issues of fact and credibility are for the trial court to decide].)

Given the parents' use of a dangerous drug, and the fact that the use had already caused serious physical harm to a child, the court's jurisdictional findings were proper.

## II. Disposition

Under section 361, subdivision (c)(1), a child may not be removed from a custodial parent unless the dependency court finds, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection,

or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." We review the lower court's dispositional findings for substantial evidence. (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161; *In re Lana S.* (2012) 207 Cal.App.4th 94, 105.) On appeal from an order subject to a clear and convincing evidence standard ""'"the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong." [Citation.]' [Citation.] 'We have no power to judge the effect or value of the evidence, to weigh the evidence [or] to consider the credibility of witnesses . . . .'" (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581, fn. omitted.)

We find that substantial evidence supports the dependency court's order removing the children from the parents' custody. "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, overturned on other grounds in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 749.) Again, there was actual harm in this case, as A.A. was born testing positive for methamphetamine. Father points out that A.A. did not exhibit signs of withdrawal, but this was merely a matter of sheer luck, and cannot support a finding that A.A. was not harmed. The parents also argue that the dependency court improperly based its removal order on prior, unsubstantiated DCFS referrals. This argument is belied by the record, as the court specifically stated the "nexus" of the risk was the methamphetamine use, specifically Mother's use while pregnant.

Other evidence supported the dependency court's order, including the state of the home, which posed risks to small children. Infancy is "an inherently hazardous period of life." (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 825.) Further, as the dependency court noted, by the time of the hearing, Mother and Father had tested clean for only about one month. The court was not compelled to find that their drug use, which had already

7

caused harm, was no longer an issue.  The court did not err by seeking to avert further harm at this stage of the proceedings and removing the children.

## **DISPOSITION**

The jurisdictional and dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.